Argued March 4, decided March 17, 1914.

# TAYLOR *v.* TAYLOR.*

(139 Pac. 852.)

**Vendor and Purchaser—Rights of Parties—Bona Fide Purchasers.**

1. A purchaser of land from one appearing by record to have a fee-simple title, having no notice that the title of the grantor was obtained by fraud and undue influence, is entitled to protection as a *bona fide* purchaser.

**Vendor and Purchaser—Rights of Parties—Subsequent Purchaser.**

2. Where a conveyance is obtained by fraud or undue influence, and the grantee, having sold the land, purchases with the proceeds other land, which he conveys to one having notice of·the circumstances, the last grantee is liable to the original grantor for the value of the property received.

> [As to the rule that notice before payment defeats claim of *bona fide* purchaser, see notes in 12 Am. Dec. 212; Ann. Cas. 1914A, 44.]

**Cancellation of Instruments—Extent of Relief.**

3. In an action against plaintiff's grantee and a subsequent grantee and also the grantee of another tract purchased by the first grantee with the proceeds of the first tract, based on the undue influence of the first grantee in obtaining his conveyance, the plaintiff is at most entitled to recover his property, or the proceeds thereof, and cannot recover both the land originally held by him and the land procured with the proceeds thereof.

> [As to the presumption that a subsequent purchaser is one *bona fide*, see note in 17 Am. St. Rep. 288.]

**Equity—Relief—Complaint—Prayer.**

4. In a suit to set aside a conveyance for undue influence, and subsequent conveyances, a prayer in the complaint for general relief is sufficient, where the facts alleged authorize it, to justify a decree against the grantee of lands obtained by one of the defendants with the proceeds of plaintiff's land, for the value of the land so received.

———

*On the question of the title of a *bona fide* purchaser from fraudulent grantee, see note in 67 L. R. A. 891, 898.              REPORTER.

From Coos: JOHN S. COKE, Judge.

Department 1. Statement by MR. JUSTICE BURNETT.

The plaintiff, Daniel J. Taylor, by J. J. Stanley, his guardian, brings this suit against L. F. Smith and Maggie C. Smith, his wife, his immediate grantees, and E. O. Carter and Ollie Carter, his wife, J. E. Olson and Angie Olson, his wife, as their successors in interest to set aside a conveyance of real property, on the ground that, owing to his old age and his confidence in his grantee as his spiritual adviser, and by reason of the undue influence of the grantee, the plaintiff was induced to transfer his land without having received any consideration therefor. From a decree dismissing the suit as against the successors of the original grantee, and giving a money judgment against the latter and his wife, the plaintiff appeals. Additional facts appear in the opinion.            MODIFIED.

For appellant there was a brief and an oral argument by *Mr. C. R. Barrow.*

For respondents L. F. Smith and Maggie C. Smith, E. O. Carter and Ollie Carter, there was a brief and an oral argument by *Mr. L. A. Roberts.*

For respondents J. E. Olson and Angie Olson, there was a brief over the names of *Mr. L. A. Liljeqvist* and *Mr. A. J. Sherwood,* with an oral argument by *Mr. Liljeqvist.*

MR. JUSTICE BURNETT delivered the opinion of the court.

In the complaint it appears that the plaintiff was the owner of a tract of land in Coos County, which he says he was induced to convey to L. F. Smith by reason of fraud, misrepresentations, undue influence and

deceit of the latter. At the same time Smith and his wife gave back to the plaintiff a lease of the whole premises terminating on the death of the latter, which, as plaintiff says, the defendant Smith by similar tactics afterward persuaded him to cancel. It is said also in the complaint that, as an inducement to the original conveyance, Smith agreed in writing with the plaintiff to pay him $50 per annum and give him a home in Smith's family, and to continue the home and the annuity until plaintiff's death. It is further stated in substance that in pursuance of Smith's design to defraud the plaintiff of his property, the former, after obtaining the surrender of the life lease, sold the property to the defendant Carter for much less than its value, and that Carter took title with notice of the rights of the plaintiff and of the fraud practiced upon him by the Smiths. Still further, it is stated in the complaint that Smith took $2,700 of the purchase price paid to him by Carter and bought other real property, which he in turn sold to the defendant Olson, who likewise took with knowledge of all the facts, including that of the purchase price paid by Smith, being the money of the plaintiff. Carter and his wife answered, traversing the complaint in material particulars, and alleged that Carter bought the land originally owned by Taylor for $4,500, the same being a fair price for the same, and that the purchase was made without any knowledge whatever on the part of Carter of the fact that the plaintiff had or claimed any right or interest in the property, or that the same had been obtained from him by any fraud or deceit or other untoward practice. The defendants Olson demurred to the complaint, and the court sustained the demurrer, but took no further proceedings respecting them. The defendants Smith and wife answered the complaint, denying all fraud and undue influence; admitted the contract

of Smith whereby he was to take care of the plaintiff in his family and give him an annuity of $50 during his life; alleged that the sale of the land to Carter, the purchase of the other land with part of the proceeds, and the conveyance of the latter tract to Olson were all done with the knowledge and consent of the plaintiff, and averred that the land was transferred to Olson with the condition reserved in the deed, providing for the care and maintenance of the plaintiff and the payment to him of the annuity mentioned, all with the consent and knowledge of the plaintiff. The new matter in the answers of the Carters and Smiths was traversed by the reply. In this state of the pleadings, without further disposition of the matter as to the plaintiff and Olson, the court heard testimony and passed a decree in substance that Carter and Olson were purchasers in good faith for a valuable consideration, without knowledge of any equity inuring to the plaintiff, and rendered a personal decree against the defendant Smith and his wife for $4,742.99.

1. It was admitted at the trial that the annuity of $50 had been regularly paid to and received by the plaintiff. The weight of the testimony overwhelmingly shows that Carter took title without notice of any equity existing in favor of the plaintiff. By the recorded instruments to which allusion has been made, the defendant Smith appeared to be owner in fee simple of the realty first owned by the plaintiff, and, not having any notice of the motives which prompted the transfer of the land to Smith, Carter is entitled to be protected as a purchaser in good faith for a valuable consideration; and the court was right in its decree dismissing the suit as to Carter and his wife.

2. Error, however, was committed in sustaining the demurrer of defendants Olson to the complaint. Quite as effectively as against Carter, the complaint charges

upon Olson that, with money in real truth belonging to the plaintiff, Smith had purchased land which he afterward sold to Olson, who took with knowledge of the fact that Smith had bought the same with plaintiff's money, and hence, by a resulting trust, held the property for the plaintiff. If that were true, which must be so as against a demurrer, Olson made himself a participant in the perpetration of the fraud against the plaintiff which the latter alleges, and hence could not be protected in his payment of the money to Smith. It appears by the certified copy of the deed from Smith to Olson that the land conveyed was charged with the maintenance of the plaintiff during his life, and the payment of the $50 annuity.

3. The plaintiff complains that he was cheated out of his property, and has been compelled to reside in the Coos County Poorhouse. This is denied. The plaintiff also claims that a decree should be entered in his favor compelling a reconveyance from Carter of the original holdings, and that Smith and Olson should be compelled to make restitution. Thus apparently he would visit the original fraud on all the property handled by any of the defendants, even to the second and third alienations. At the utmost the plaintiff can be restored only to what property originally belonged to him, or the proceeds thereof as against those who either participated in or took with notice of the alleged fraud. There is no ground for a personal decree against the wife of Smith, for she was not a party to the contract for keeping the plaintiff or to the alleged fraud, and is not shown to be possessed of any of plaintiff's property or the proceeds thereof.

4. As we have seen, Carter is exonerated from participating in or having notice of the alleged deceit of Smith. But not so with Olson, for the court erred

in sustaining his demurrer to the complaint, and there was no issue of fact raised in his behalf. The decree as to Olson was premature. Something was said at the argument about the prayer of the complaint against Olson being insufficient; but this cannot affect the allegations of the complaint. Enough is said in that pleading to charge Olson as a party to the deception whereby the plaintiff was deprived of at least as much of the proceeds of his original home as went into land which Olson afterward acquired, and the prayer for general relief which is appended to the complaint is sufficient to authorize the court on a proper hearing to settle the rights of the plaintiff respecting the land held by Olson: *Gilmore* v. *Burch,* 7 Or. 374 (33 Am. Rep. 710); *South Portland Land Co.* v. *Munger,* 36 Or. 457 (54 Pac. 815, 60 Pac. 5); *Rutenic* v. *Hamakar,* 40 Or. 444 (67 Pac. 196).

There was some question in the testimony about whether the plaintiff voluntarily left the home provided for him by Smith with Olson, or was compelled to leave. But in the absence of pleading as between him and Olson this question could not be properly settled. It is one thing to defraud a grantor by means of false representations whereby he is induced to enter into a contract the covin of which is evidenced by the subsequent refusal to perform the covenants in his favor, and quite another thing to make a contract in good faith, the performance of which is abandoned by either party. The covenants in the deed to Olson, being for the benefit of the plaintiff, could be enforced by the latter in his own right. If he authorized them to be made, or knowingly ratified them, the other parties to the same are not to blame if he voluntarily and without cause abandoned his rights under them. These questions are merely suggested for the reason that, as between the Smiths, Olsons' and

the plaintiff, the case was carried to decree without proper pleadings. As to all parties except Carter and wife, the decree is reversed and the cause remanded to the Circuit Court for further proceedings as the parties may be advised concerning their interests. No party to the litigation shall recover costs or disbursements from either of the others.        MODIFIED.

Mr. Justice Moore and Mr. Justice Ramsey concur. Mr. Chief Justice McBride did not sit.