Argued at Pendleton October 27; modified December 1, 1936

# MONESE *v.* STRUVE ET AL.

(62 P. (2d) 822)

Department 2.

*A. S. Cooley,* of Pendleton (Peterson & Peterson and Lewis & Isaminger, all of Pendleton, on the brief), for appellants.

*J. R. Raley,* of Pendleton (Raley, Kilkenny & Raley, of Pendleton, on the brief), for respondent.

BEAN, J. On November 1, 1919, Pendleton Lodge No. 288, B. P. O. Elks, being a corporation organized under the laws of Oregon and the owner of real estate described in the mortgage hereinafter mentioned, executed and delivered to plaintiff 12 promissory notes, each of which was for the sum of $5,000, with interest at 6 per cent per annum from date until paid, interest to be paid semi-annually, May 1 and November 1. The notes were due on or before 20 years after date. Each contained an acceleration clause, that if the interest was not paid the whole sum would become due and collectible at the option of the holder of the notes, and provided for attorneys' fees in case of suit. In order to secure the payment of said sum of $60,000, at the same time the Pendleton Lodge No. 288, B. P. O. E. (which for convenience is called the Elks Club) executed and delivered to plaintiff a mortgage bearing that date, whereby the large mortgage pledged to plaintiff the real property described in the mortgage, to wit:

"The Easterly 75 feet of Lots 1 and 2 in Block 17 in Pendleton, Oregon, according to the plat and survey thereof, and being a part of the original town of Pendleton."

This tract is also described in the mortgage by metes and bounds. The mortgage was duly recorded on November 10, 1919. On July 9, 1920, after plaintiff's mortgage had been duly executed and recorded, the

Elks Club executed to defendant William E. Hanscom a certain instrument in writing, the substantial part of which is as follows:

"Know All Men By These Presents, That Pendleton Lodge No. 288, B. P. O. Elks, a corporation, in consideration of the sum of $750.00, to it paid by William E. Hanscom, of Pendleton, Oregon, does hereby grant, bargain, sell and convey unto the said William E. Hanscom, his heirs and assigns, a perpetual right, privilege, license, and easement as hereinafter more fully described in and to a tract of land described as follows, to wit:

"Beginning at the Southwest corner of Lot 2 in Block 17, in the original Town of Pendleton; thence Northerly along the West line of Garden Street a distance of 8 inches; thence Westerly and parallel with the South line of Lot 2 to the West line of said Lot 2; thence South a distance of 8 inches to the Southwest corner of Lot 2; thence Easterly along the South line of Lot 2 a distance of 100 feet to the point of beginning.

"That right, privilege, license and easement hereby given being the right to use the wall now located upon said premises in connection with Lot 3 in the said Block 17, under the terms and conditions hereinafter described."

The grantee was to have the right to the use of the wall for a height not to exceed 18 feet from the street level, and where there was no wall at that time upon the property described he had the right, at his own expense, to construct a wall on the said property not exceeding 18 feet above the street level, under the supervision of the grantor, and any walls constructed on the west 25 feet of the property described by either party might be used by the other party upon payment to the party constructing the same of one-half the reasonable cost thereof. The grantee Hanscom also had the right to use the wall now constructed on said property for any height

above 18 feet that he might desire to use upon payment to the grantor at the rate of $30 per foot measured vertically. The deed provided that the agreement and easement was made for the benefit of the owner of the said lot 2 and the northerly portion of lot 3, in said block 17, and "shall run with the land".

After the execution of said instrument, and about October 11, 1920, William E. Hanscom, being the owner of said lot 3, in block 17 in the original town of Pendleton, sold and conveyed the said lot 3 to Jotham Hanscom, which conveyance was duly recorded. Thereafter, William E. Hanscom, or Jotham Hanscom, proceeded to erect a one-story building upon said lot 3 in block 17, and in connection therewith extended the roofing timbers and trusses into the wall on the property described and used the wall as a portion of the wall of said building on lot 3, and ever since has continued to so use said wall upon the property described in the agreement between the Elks Club and William E. Hanscom, in accordance with the right, privilege, license and easement conferred thereby.

Plaintiff alleges, among other things, that the indebtedness evidenced by the notes and secured by the mortgage in the sum of $60,000, with interest upon the sum of $40,000, at 6 per cent per annum from November 1, 1933, and with interest on the sum of $20,000, at 6 per cent per annum from May 1, 1933, until paid, has not been paid, nor any part thereof except such portion as he received by reason of the purchase by him under foreclosure of the said property mentioned in said mortgage, being the sum of $43,000, including costs, disbursements and attorneys' fees.

The first foreclosure of the mortgage was commenced on January 29, 1934, by plaintiff against defendants, the Elks Club, the owner of the mortgaged

land, and subsequent lien claimants. Neither William E. Hanscom, nor his successors in interest, as the owners of the dominant estate and the easement, were made parties defendant in the foreclosure suit. Execution was issued and the land was sold. At the foreclosure sale, plaintiff, the mortgagee, purchased the mortgaged land for less than the amount of the decree, namely, for $43,000, and took possession of the mortgaged land. The sale was confirmed and, the statutory time for redemption having expired, plaintiff received a sheriff's deed for the property. Approximately six months after the issuance of the sheriff's deed plaintiff instituted the present suit and seeks thereby (a) to compel defendants to redeem by paying his mortgage in full or be deprived of the easement, or (b) a foreclosure of the mortgage as to the deficiency remaining in the foreclosure decree and sale of the easement to satisfy that deficiency, and (c) for such other and further relief as may be equitable. Demurrers of the several defendants were interposed to the amended complaint. The demurrers were overruled and answers were filed.

Henry Struve, executor of the last will and testament of Jotham Hanscom, deceased, and all the other defendants, with the exception of the receiver, filed a joint answer containing admissions and denials. The admissions in their answers are to the effect that notes and mortgages were given and recorded; that the suit to foreclose was instituted, the decree of foreclosure was entered therein, the land was sold, plaintiff purchased on the foreclosure at execution sale, the sale was confirmed, the time for redemption elapsed, sheriff's deed was issued, plaintiff became and now is the owner of the mortgaged property; that the easement deed was executed, delivered and recorded and that the grantee named in that deed erected a building upon the

dominant estate and in connection therewith used the wall on the servient estate and so used the same in accordance with the right conferred by the easement deed, and in connection therewith it is alleged that the building so constructed by William E. Hanscom is a one-story brick building and the wall so used by him under the right conferred by the easement deed is the south wall of a four-story brick building located upon the property so purchased by plaintiff at the foreclosure sale.

The answer of the receiver, in substance, is the same as the answer of the other defendants. He sets up a separate answer, in substance, that Jotham Hanscom and Claude Hanscom had given the Inland Empire Bank of Pendleton a note in the sum of $25,000. The note was afterwards sold and transferred to the First Inland National Bank of Pendleton, Oregon, which bank is insolvent and is in the hands of the receiver for liquidation.

Under the will of Jotham Hanscom, deceased, land received by Claude Hanscom, but not the land involved in this case, was charged with the debt of $25,000, and in the foreclosure suit instituted in 1934 the First Inland National Bank of Pendleton, the conservator of that bank, and the First National Bank of Pendleton, the predecessor of the First Inland National Bank, were made defendants by reason of the holding of a second mortgage against the lodge property. A motion for decree on the pleadings was filed.

The lower court entered a second decree determining the amount due upon the mortgage without attorney's fees and without costs in the former foreclosure and directed a resale of the property, including the easement and the application of the proceeds to the payment of the amount found due the plaintiff by the de-

cree with the remainder to the parties, as their interest may appear.

We do not find that the mortgagor, the Elks Club, was a party to the second foreclosure or decree. The first decree was not set aside, and, as far as appears, the second decree only affected the plaintiff and the defendants in the present suit.

Defendants contend that the lien of the mortgage was exhausted by the first foreclosure and plaintiff can not again foreclose on the easement. Jotham Hanscom died testate March 25, 1928, and his devisees and legatees, and parties claiming through them, are made parties defendant.

Plaintiff contends that the holder of a mortgage, who has foreclosed and purchased at sheriff's sale for an amount less than his judgment, is entitled to relief against the owner of an easement upon the land created after the mortgage was given but who was not joined as a party in the foreclosure proceedings.

The error claimed by defendants is embraced in the court's overruling of the demurrers to the amended complaint. There is an interesting discussion in defendant's brief and argument to the effect that a decree of strict foreclosure can not be maintained against defendants, the owners of the easement. We will pass this, as we do not believe that strict foreclosure would be equitable under the circumstances of this case. Defendants assert that the court erred in allowing a motion for judgment on the pleadings and in foreclosing the mortgage and directing the sale of the land.

Defendants contend that foreclosure and sale destroyed the mortgage, citing *Trunnell v. Tonole*, 104 Or. 628, 633 (208 P. 583); *Gage v. Brewster*, 31 N. Y. 218, 226; *Hitchcock v. Merrick*, 18 Wis. 375.

■■ In the present case what we will term the first foreclosure, in order to mark the distinction under the

facts as disclosed in this case, although valid as to the Elks Club, the mortgagor, was invalid and ineffectual for any purpose as to the interest of the defendants in the party wall. As between them and the plaintiff, the respective rights of the parties remained precisely as they were before. The plaintiff being the owner of an unforeclosed mortgage, the lien of which was paramount, the interest of the defendants in the mortgaged premises under such circumstances was governed, we think, by the same principles as govern the correction of a mistake in the execution of a document or such a mistake that is carried into a decree. The mortgagee has the right to a second foreclosure as to the parties omitted in the first foreclosure. A resale of the premises affords defendants every right which they would have had if they had been properly joined as parties in the first foreclosure and subjects them to no additional inconvenience or hardships. The theory of the law is that as to them the mortgage is unforeclosed. Defendants have no reason to object to a resale of their interest in the premises: *Sellwood v. Gray*, 11 Or. 534, 540 (5 P. 196).

In the instant case the property was mortgaged before the easement was created. It would seem strange if one could mortgage his property, then create an easement and convey by deed a valuable interest in a portion of the mortgaged real estate for a valuable consideration like $750, and have the easement released from the mortgage without being sold upon execution.

All the authorities assert that the essential qualities of easement are: first, they are incorporeal; second, they are imposed upon corporeal property, and not upon the owner of it; third, they confer no right to a participation in the profits arising from such property; fourth, they are imposed for the benefit of corporeal property; and, fifth, there must be two distinct tene-

ments, the dominant to which the right belongs and the servient upon which the obligation is imposed: 19 C. J. 864, § 2. Rights conferred by an easement attach to the estate and not to the person of the dominant tenement and they follow that estate into the hands of the assignee thereof. On the other hand, they are a charge upon the estate or property of the servient tenement and follow it into the hands of any person to whom such tenement or any part thereof is subsequently conveyed: 19 C. J. 864, (Note B); *Taylor v. Dyches*, 69 Ga. 455; *Morrison v. King*, 62 Ill. 30.

An easement is an interest in land. See *Ruhnke v. Aubert*, 58 Or. 6, 10 (113 P. 38); *Beck v. Lane County*, 141 Or. 580, 589 (18 P. (2d) 594); *Mannix v. Powell County*, 60 Mont. 510 (199 P. 914, 915). In a suit to foreclose a mortgage the owners of an interest in land are necessary defendants: *Johnson v. White*, 60 Or. 611, 614 (112 P. 1083, 119 P. 769); *Rector v. Mack*, 93 N. Y. 488, (45 Am. Rep. 260, 263). Where a necessary party is omitted from such foreclosure the decree is good as to those properly joined: (A) Where the omitted parties are lien holders: *Sellwood v. Gray*, supra; *Koerner v. Willamette Iron Works*, 36 Or. 90, 91 (58 P. 863, 78 Am. St. Rep. 759); *Gaines v. Childers*, 38 Or. 200, 203 (63 P. 487). (B) Where the omitted parties are owners of an interest in land: *Wilson v. Tarter*, 22 Or. 504, 510 (30 P. 499); *Tualatin Academy v. Keene*, 59 Or. 496 (117 P. 424); *Coughanour v. Hutchinson*, 41 Or. 419, 423 (69 P. 68).

Neither William E. Hanscom, nor his successors in interest in the dominant estate, were made parties to the foreclosure suit, and their interest is not affected by such suit. They still hold the easement subject to the mortgage unaffected by any foreclosure or sale to which they were not a party. The effect of foreclosure was to vest in the plaintiff the title to that portion of

the property which remained in the mortgagor leaving his mortgage unforeclosed as to defendants' interest in the property: *Sellwood v. Gray,* supra; *Gaines v. Childers,* supra; *Wilson v. Tarter,* supra; *Tualatin Academy v. Keene,* supra. The interest of defendants never having been foreclosed, they still hold their interest subject to the mortgage. It is proper and necessary that plaintiff maintain a suit against the defendants to foreclose their interest in the land.

Plaintiff's title, acquired under the foreclosure sale, was precisely the same as a third party would have acquired by the assignment of the mortgage and the deed of the Elks Club of all its interest in the premises, subject only to the right of defendants as owners of the easement: *Sellwood v. Gray,* supra. It is said in *Watson v. Dundee M. & T. I. Co.,* 12 Or. 474, 482 (8 P. 548), a case somewhat similar to the present case:

"The title, then, which Hughes acquired under the sale to him was precisely the same as if he had taken an assignment of the Dickson mortgages, and the deed of Hardin McCallister and wife of all their interests in the premises, subject to the right of the appellant to redeem the premises by the payment of the amount due on the Dickson mortgages * * *. And as to the Dickson mortgages, * * * he acquired the right to them in the same manner and to the same extent as though the mortgages had been assigned to him without foreclosure."

■ The decree of foreclosure being ineffective as to the defendants, the mortgage is not destroyed as to their interest in the land, nor is it merged in the purchase by plaintiff at sheriff's sale under the decree of foreclosure: *Watson v. Dundee M. & T. I. Co.,* supra. In *Title Guarantee Co. v. Wrenn,* 35 Or. 62, 73 (56 P. 271, 76 Am. St. Rep. 454), it is said:

"In short, where the legal ownership of the land and the absolute ownership of the incumbrance become

vested in the same person, the intention governs the merger in equity. If this intention has been expressed, it controls. In the absence of such an expression, the intention will be presumed from what appear to be the best interests of the party, as shown by all the circumstances.''

As stated in *Katz v. Obenchain*, 48 Or. 352, 358 (85 P. 617, 120 Am. St. Rep. 821):

''it was therefore manifestly to the interest of the plaintiff that it [the mortgage] should not be extinguished as against any subsequent lien by the conveyance to him of the legal title to the mortgaged property, and as there was no express intention of a merger, a court of equity will, in order to prevent an injury to him, keep the two estates separate and distinct.''

In *Pearce v. Buell*, 22 Or. 29, 34 (29 P. 78), it is stated:

''The principle running through all the cases of this class, says Barculo, J., 'is, that when the legal rights of parties have been changed by mistake, equity restores them to their former conditions when it can be done without interfering with any new rights acquired on the faith and strength of the altered condition of the legal rights, and without doing injustice to other persons.' (Barnes v. Camack, 1 Barb. 392). In such cases a court of equity will look through the form to the substance of the transaction and keep an incumbrance alive, or consider it extinguished as will best serve the purposes of justice and the intention of the parties.''

The rule of *caveat emptor* does not operate in this case to defeat relief. Defendants have cited *Trunnell v. Tonole,* supra. In that case the mortgagee sought, after decree, to reform the mortgage. The court said:

''As against their effort to include in their mortgage what they thought was there, but which in fact was not, the plaintiffs have allowed the water to run by the mill of opportunity.''

 That case differs from the one at bar in this: There the defect was in the mortgage itself; in the present case the mortgage actually covered the interests of defendants in this property. *Caveat emptor* does not apply in this case in determining what plaintiff secured under his purchase at sheriff's sale. He did not get all that he though he was getting, and that is the reason this suit was brought. He acquired only the interest which the court was authorized to sell, the interest of the defendants who were proper parties to the proceeding. There is nothing in the Trunnel case, or in the rule of *caveat emptor* which in any manner affects the long line of decisions in this state permitting a mortgagee to obtain relief against owners or incumbrancers who were not made parties to the original proceeding. Foreclosure and sale destroy the mortgage and exhaust its lien only so far as it affects persons and interests properly joined and served. Defendants acquired their interest in this property subject to the indebtedness evidenced by the mortgage, which indebtedness is still unpaid, and their equity of redemption in the premises is unaffected by the foreclosure to which they were not made parties: *Johnson v. White,* 60 Or. 611 (122 P. 1083, 119 P. 769).

Defendants claim that plaintiff is attempting to foreclose his mortgage by piecemeal. They cite *Cary v. Metropolitan Ins. Co.,* 141 Or. 388 (17 P. (2d) 1111). The facts in that case are not parallel to the facts in the present case. In the case at bar plaintiff, instead of attempting to foreclose the mortgage by piecemeal, is simply attempting to correct a mistake and to finish the foreclosure which he commenced when he foreclosed the interest of the Elks Club, defective only by reason of the absence of necessary parties. William E. Hans-

com and his successors in interest, the owners of the easement, have no cause to complain of the proceedings.

■ A prayer for general relief in a complaint in equity authorizes a court to render such decree as may be properly given under allegations of the complaint: *Gilmore v. Burch,* 7 Or. 374, 384 (33 Am. Rep. 710); *Rutenic v. Hamaker,* 40 Or. 444, 457 (67 P. 196); *Taylor v. Taylor,* 69 Or. 541, 546 (139 P. 852); *McCredie v. McCredie,* 134 Or. 517, 523 (294 P. 361). It seems to be equitable and proper that there should be a sale of the interest of defendants. A similar situation is cited in the case of *Morey v. City of Duluth,* 69 Minn. 5 (71 N. W. 694), where we read:

"Upon the facts alleged, the foreclosure, in 1894, although valid as to the mortgagor, was invalid and ineffectual for any purpose as to the defendants. As between them and the plaintiff, the respective rights of the parties remained precisely as they were before, the plaintiff being the owner of an unforeclosed mortgage, the lien of which was paramount to the interests of the defendants in the mortgaged premises. Under such circumstances, there can be no doubt, upon either principle or authority, but that the mortgagee has a right to a second foreclosure as to the omitted parties. There was no need of, and, so far as appears, there was no right to, a second foreclosure as to the mortgagor. As between him and the plaintiff, his debt is satisfied by the first foreclosure, and a second foreclosure against these defendants can in no way disturb or affect his rights." See also *Brackett v. Banegas,* 116 Cal. 278 (48 P. 90, 91, 58 Am. St., Rep 164); *Webb v. Trimble Bros.,* 143 Ky. 375 (136 S. W. 870).

The facts and circumstances of the present case differ from those in the case of *Morey v. City of Duluth,* supra, as the owner's of the easement are in a different position, not being a municipal corporation and not having the right of eminent domain. The omission by reason of which the former foreclosure was ineffective as to them was entirely the fault of the plaintiff. How-

ever, the equities of the defendants should be taken into consideration. The owners of the dominant estate have had the benefit of the easement for a long time and it does not appear there is any equitable way to annul the same or that it would be for the benefit of either party to tear down the so-called party wall, or separate the building of defendants therefrom.

No further decree is necessary in regard to rights of the Elks Club. The right, title and interest of the defendants, the owners of the easement in the land, should be sold separately from the sale formerly mâde of the interest of the Elks Club for the satisfaction of an equitable portion of the deficiency judgment.

Defendants argue that foreclosure of the right and title to the easement can not be made to satisfy the deficiency remaining in the original foreclosure suit for the reason, as they state, that ''The notes involved were given by the Elks Club. The defendants are in no way liable for payment of them. Neither are they liable for payment of the deficiency in the foreclosure suit. The liability for payment of the notes is upon the maker of them.'' Nevertheless the property of defendants, to wit, their right and title to the party wall or easement, is liable, and was at the time William E. Hanscom purchased the same, for a portion of the debt or deficiency judgment.

Section 6-507, Oregon Code 1930, provides, *inter alia,* that property sold on execution issued upon a decree may be redeemed in like manner and with like effect as property sold on execution issued on a judgment and not otherwise. Section 3-502 provides, in part, that property sold subject to redemption, as provided in the last section, or any part thereof separately sold, may be redeemed by the following persons: The mortgagor or judgment debtor, whose right and title were

sold, or his heir, devisee, or grantee, who has acquired, by inheritance, devise, deed, sale or by virtue of any execution, or by any other means, the legal title to the whole or any part of the property separately sold.

William E. Hanscom was a grantee of the Elks Club of a perpetual right, privilege, license and easement in a portion of the property described in the mortgage. The interested defendants have succeeded to the rights of William E. Hanscom and are entitled to redeem from a sale that may be made of that portion of the land mortgaged, known as the easement: 42 C. J. 357, § 2091; *Jacobson v. Lassas,* 49 Or. 470, 472 (90 P. 904, 905).

In *Wilson v. Tarter,* supra, at page 511, we find a quotation from *Robinson v. Fife,* 3 Ohio St. 551, as follows:

" 'The right to claim that the whole, and not a part, shall be redeemed, is a right which appertains to the mortgagees, and not to the mortgagor. The reason of the rule is, that the mortgagee shall not be compelled to divide or apportion his security.' (Boqut v. Coburn, 27 Barb. 230). 'But this rule does not apply,' it is said, 'Where the mortgage has been foreclosed without making all of the several owners of the land parties to the suit, and the mortgagee has purchased at the sale, because he has by such proceeding and purchase voluntarily severed his right, and obtained an indefeasible title to part of the land, and only a defeasible title to another part. The owner not made a party, may redeem the portion owned by him on paying a part of the mortgage debt bearing such proportion to the whole as the value of his land bears to that part of the whole mortgaged premises.' (2 Jones, Mort. § 1074)." See also *Tulatin Academy v. Keene,* supra.

■ At the foreclosure sale the Elks Club property was not sold for the full amount of the mortgage debt and the mortgage was not merged in the decree or extinguished except as to the property of the Elks Club. By failing to make the owners of the easement parties to

the suit to foreclose the mortgage, and the mortgagee having purchased at the sale by such proceeding and purchase, he has voluntarily severed his right and obtained an indefeasible title to part of the land and only a defeasible title to another part. In the event the owners of the easement, or their successors in interest, desire to redeem from such sale, they may redeem the portion owned by them, that is, the easement, so-called, on paying a part of the mortgage debt, bearing such a proportion to the whole, as the value of the easement bears to that of the whole mortgaged premises: 2 Jones on Mortgages (8th Ed.) § 1375; *Hinners v. Birkevaag,* 113 N. J. Eq. 413 (167 Atl. 209). We believe that such equitable jurisdiction should be exercised in the present case.

The trial court is hereby authorized and directed to permit the defendants, or their successors in interest, to redeem from the sale of the easement in accordance with this opinion, if they desire to do so.

The interest of the receiver of the First National Bank of Pendleton, if any he has in the easement in question, should be foreclosed; so also that of Eva Amanda Stevens. She is a proper party to the suit and will be entitled to have her claim satisfied out of the property unless she is properly barred.

Subject to this modification and suggestion in regard to the manner of sale and redemption, the decree of the circuit court will be affirmed and the cause will be remanded to that court with directions to enter a decree in accordance herewith and take such proceedings as may be deemed proper, not inconsistent with this opinion.

Neither party to this suit will recover costs in this court.

RAND, BAILEY and BELT, JJ., concur.